UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:06-CV-573-H

JEFFREY HAYES                                                      PLAINTIFF


V.


UNITED PARCEL SERVICE, et. al.                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffrey Hayes ("Hayes") was employed as a driver for Defendant United Parcel Service ("UPS").  UPS terminated Hayes' employment on March 31, 2006.  At all times material to this lawsuit UPS had a collective bargaining agreement ("CBA") with Co-Defendant International Brotherhood of Teamsters, Warehousemen and Chauffeurs Local Union No. 236 ("Local 236" or "Union").  Hayes has sued both UPS and Local 236 under §301 of the Labor-Management Relations Act (29 U.S.C. § 185) alleging that: (1) UPS violated the CBA when it terminated his employment without "good cause" and (2) Local 236 breached its duty to fairly represent Hayes in pursuing his grievance of his termination.

Pending before the Court are UPS's and Local 236's separate motions for summary judgment.  The Court has had the benefit of an in-chambers conference, at which the parties ably explained their positions.  After thorough review, the Court concludes that the evidence cannot support a Section 301 cause of action.

I.

The relevant evidence viewed in the light most favorable to Hayes follows.  Hayes began working at the UPS Paducah Center in 1988 and worked there full time as a package car driver from 1992 until he was discharged on March 31, 2006.  Hayes' direct supervisor was Don Hayse ("Hayse").  Steven Buckman ("Buckman") managed the Paducah Center and Tim Bingham ("Bingham") acted as the Paducah Center's Division Manager.  Hayes was represented for collective bargaining purposes by Local 236.  Darren Woodward was Hayes' Local 236 union steward.

As part of Hayes' package driver duties, he entered data about his delivery route into a DIAD.[1]  The data entered into the DIAD provides UPS supervisors information about what happened during a given shift, which can be useful in monitoring a driver's performance.  One measurement of performance is the amount of time a driver takes to complete a given route. UPS calculates "planned time" based on what actually happens during the shift as reflected by the DIAD. The variables that go into determining "planned time" include the number of pick-ups, deliveries, stops, and the number of packages over-70 pounds ("over-70") handled.  If a driver takes longer than the "planned time" estimate to complete a route, he is considered "over-allowed" and if he takes less time, he is considered "under-allowed."  Because over-70 pound packages generally take longer to deliver than lighter packages, a driver receives a thirty second additional time credit in his "planned time" for every over-70 package he reports that he picks up or delivers.  UPS requires that its shippers label packages weighing over-70 pounds with a "heavy package" sticker, but sometimes over-70 pound packages are not so labeled.

Hayes says that Buckman had a "hostile attitude" toward him, stemming from an incident

_____

[1]A DIAD is a device that contains statistical data regarding each driver's work day, including characteristics of certain packages, miles driven, the number of pick-ups, deliveries, stops, etc.

2

in 2005 when Hayes' wife called UPS' corporate office to report that Buckman had been rude to her during a telephone conversation.  According to Hayes, as a result of the "bad blood" between them, Buckman "wanted some excuse to monitor Hayes' performance in a manner that would provide him with some excuse to fire Hayes."  Hayes alleges that Buckman created his "excuse" by claiming that Hayes had a high number of "over allowances" in early 2006 and was recording a higher number of miles than expected.  According to Hayes, these unjustified suspicions[2] formed the pretext by which Buckman scheduled Hayes' direct supervisor to ride with Hayes on March 7, 8, and 9, 2006 to monitor Hayes' performance.  On the three performance rides, Hayes did not record any over-70 packages in his DIAD, his mileage was lower, although his "over allowance" did not vary much from his average "over allowance."  Hayes says that the lower miles and absence of any over-70 pound packages were due to the fact that on the days of the performance rides, Hayes' usual route was shortened and the stop to Calvert City, where Hayes would typically encounter over-70 packages, was eliminated.

Following the performance rides, Bingham and Buckman met with Hayes on March 31, 2006 to address what they believed to be "dishonest behavior."  Hayes' union steward, Woodward, was also present.  At the meeting, Bingham and Buckman asked Hayes about the "high number" of over-70 packages that Hayes entered into his DIAD on the days when he was not accompanied by a supervisor and showed him a document indicating that the prior day he had entered twenty-three packages as over-70 pounds.  Hayes says he denied entering twenty-three packages, and explained to Buckman and Bingham that, in general, he used his own judgment to determine if a package was over-70 pounds, and did not just go by the "heavy

---

[2]Hayes presents evidence that his "over allowances" were not unusually high compared to other drivers. Hayes' Resp. to Mot. for Summ. J. Exh. 3.

package" sticker in deciding which packages to enter as over-70 in his DIAD.  The parties do not dispute that at the termination meeting Woodward suggested to Hayes that UPS might reinstate him if he admitted a mistake, however Hayes emphatically denies admitting then or at any other time that he entered packages that he believed were under 70 pounds into his DIAD.  Bingham and Buckman purportedly did not believe that Hayes could have possibly had the number of over-70 packages he had recorded and concluded that he had falsely entered packages that were under-70 pounds.  UPS' position, though not expressed by any written rule, is that only packages that are labeled as "over-70" should be entered into the DIAD.  Bingham discharged Hayes for "dishonesty" and refused Woodward's attempt on Hayes' behalf to negotiate a suspension instead of a termination.

After the termination, Local 236 filed a grievance on Hayes' behalf requesting his reinstatement with back pay.  The parties proceeded according to the grievance resolution mechanism expressed in the CBA.  The first step was a Local Level Hearing which occurred on April 19, 2006 where Woodward presented photographs of mislabeled packages and argued that because some of the packages that weighed over-70 pounds were not correctly labeled, Hayes should not have been penalized for entering packages without "heavy package" stickers.[3]  He also argued that Hayes did not earn any extra money from incorrectly entering over-70 packages. The parties did not resolve their dispute and Local 236 appealed the grievance to the Kentucky State Grievance Committee for a Panel Level Hearing.

---

[3]Hayes offers varying reports on whether he testified at the Local Level Hearing.  In his deposition, he denied making any statements at the Local Level Hearing.  Hayes Dep. 133-34.  However, at the Panel Level Hearing, Hayes testified in his opening statement, "I would like to say that I apologized at the Local Level Hearing, and I apologize to the panel now for what I've done." Mot. for Summ. J. Exh. 11.

Woodward says that in preparation for the Panel Level Hearing, he discussed Hayes' case with the President of Local 236, Bud Dillow ("Dillow") and other Union representatives.  Based on Hayes' admission to Buckman and Bingham that he *did* enter unlabeled packages as over-70 pounds, and the Union's inability to challenge the accuracy of the UPS DIAD documentation, Local 236 representatives say they concluded that the only viable strategy was to present the grievance as a "mercy case," in which the Union and Hayes would acknowledge a mistake, note Hayes' seniority at UPS, and ask for a second chance.  Two days before the April 24, 2006 Panel Level Hearing, Woodward visited Hayes' home and, according to Hayes, explained the mercy case strategy as, "Go up there and just tell them something they want to hear." Hayes Dep. 36.  Hayes says that despite his protests that he felt he had done nothing wrong, Woodward insisted and assured Hayes that he would not be discharged and to follow Woodward's advice.

At the Panel Hearing, Dillow made the following statement on Hayes' behalf:

> This is Jeff Hayes, a 16-year employee.  He's not been to this panel before.  He has made some bad decisions, poor judgments.  Jeff has expressed his apology and has admitted to his wrongful doing at the Local Level Meetings.  If the panel would give Jeff a second chance, Jeff would not be back here for another 16 years.  We feel that the panel needs to know we do not condone his actions or use the following as an excuse.  With that being said, Paducah is not a bonus center, so there is no monetary gain for the grievant, no monetary loss for the company.  We are just asking the panel to find mercy upon Jeff, a 16-year-old – a 16-year employee, and put him back to work.  He's been off almost four weeks now.

UPS Motion for Summ. J. Exh. 11.  Hayes also gave an opening statement:

> I would like to say that I apologized at the Local Level Hearing, and I apologize to the panel now for what I've done.  I made some bad judgment decisions, and I've got a family, and they depend on me.  And if the panel would give me my job back, they would not see me here again.  And I like working for UPS.  UPS is a good company to work for.

In responding to panel members' questions, Hayes testified that he "unjustly did put in a few

5

more overweights that didn't have overweight stickers on 'em," and that, "Sir, I realize that it was dishonesty.  I realize putting the overweights in that were not marked overweight, I shouldn't have put them in," and "I'm not saying it was right.  I am wrong.  I shouldn't have used the wrong judgment."  *Id.*  In response to the panel chairman's question as to whether Local 236 properly represented him in this case, Hayes answered, "Yes."  *Id.*  The panel denied Hayes' grievance, and upheld UPS' decision to discharge him.

II.

With discovery complete, UPS and Local 236 ask the Court to dismiss the claims against them pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof.  *Id.*  Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof.  *Id.*  If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at

6

324 (internal quotation marks omitted, citing Fed. R. Civ. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

III.

Hayes' complaint against UPS arises under 29 U.S.C. § 185, which makes contracts between unions and private employers enforceable in federal courts.  Here, Hayes alleges that UPS breached the CBA by discharging him without just cause, and that Local 236 violated its duty to fairly represent him.  When a former employee sues both his former employer and his union, his claim is a "hybrid §301/fair representation claim."  As the Supreme Court describes it:

> [s]uch a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.  Yet the two claims are inextricably interdependent.  To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.

*DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 164-65 (1983)(internal citations and quotation marks omitted).  In other words, in order to recover from either UPS or Local 236, Hayes must prove *both* breach of the CBA by UPS *and* breach of the duty of fair representation by Local 236.  *See Dushaw v. Roadway Exp., Inc.*, 66 F.3d 129, 132 (6th Cir. 1995)(citing *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 585 (6th Cir. 1994).  Liability does not attach to either UPS or Local 236 unless both prongs of this test are met.  *See Brewer v. Gen. Drivers, Warehousemen & Helpers*, 190 F. Supp. 2d 966 (W.D. Ky. 2002)(citing *Roeder v. Am. Postal*

7

*Workers Union*, 180 F.3d 733, 737 (6th Cir. 1999)).

## A.

The Court begins by considering Hayes' claim that Local 236 breached its duty of fair representation. Local 236, as the exclusive bargaining representative for UPS employees was under a statutory duty to fairly represent Hayes in the grievance and arbitration process with UPS. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967). *Garrison v. Cassens Transport. Co.*, 334 F.3d 528, 538 (6th Cir. 2003)(quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 75 (1991)(citations omitted)(noting, "a union owes employees a duty to represent them adequately as well as honestly and in good faith"). A union breaches its duty of fair representation when its conduct is "arbitrary, discriminatory, or in bad faith." *O'Neill*, 499 U.S. at 67; *Walk v. P\*I\*E Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir. 1992)(citing *Vaca*, 386 U.S. 171 (1967)).[4] In addition to proving either arbitrary, discriminatory, or bad faith conduct, the plaintiff in a § 301 hybrid claim must also prove that the union's breach more than likely affected the outcome of the grievance procedure. *See Dushaw*, 66 F.3d at 132. Here, Hayes does not allege that Local 236 discriminated against him, so the Court need only review his allegations that Local 236's actions were in bad faith or arbitrary.

The Court first considers Hayes' allegations of bad faith. Hayes contends that Woodward's "insistence" that Hayes present a "mercy case" was "deceitful, or undertaken in bad faith." A plaintiff must provide "substantial evidence of fraud, deceitful action or dishonest conduct" to establish that a union acted in bad faith. *Amalgamated Ass'n of Street, Elec.*

---

[4]Although *O'Neill* addressed a union's alleged breach in the context of contract-negotiations, the Sixth Circuit has concluded that its standards also apply to grievances. *Walk v. P\*I\*E Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir. 1992).

*Railway & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 279 (1971); *Barton v. Transp. Commc'ns Int'l Union*, 25 F. Supp. 2d 790, 797 (E.D. Mich 1998). Here, although Hayes testified that Woodward was "not capable of representing you, you know, to the extent that you need to be represented," *id.* at 139, lack of capability or inexperience is not evidence of bad faith. Hayes acknowledges that Woodward prepared for the lower level hearing by photographing packages and presenting evidence, and that he visited Hayes at his home and telephoned him prior to the Panel Level Hearing. Hayes Dep. 136. He also admits that Woodward and Dillow took the position that he should be reinstated before the panel. *Id.* at 139-40. Moreover, the evidence is undisputed that Woodward attempted to convince UPS to reinstate Hayes.

In Hayes' response to the motions for summary judgment, he alleges "the possibility of collusion between Union higher-ups and UPS in crafting the 'mercy plea' defense." Resp. to Mot. for Summ. J. 21. Hayes' speculation on the "possibility of collusion" apparently based solely on Woodward's and Dillow's statements that they consulted with "other Union representatives" in preparation for Hayes' Panel Level Hearing falls woefully short of a showing sufficient to permit a reasonable jury to conclude that Local 236 was colluding with UPS to "deceive" or disadvantage Hayes. There is simply no evidence that Woodward or any other Local 236 representative used misrepresentation or had ulterior motives to persuade Hayes to present the mercy case defense and the record does not permit the inference that Local 236 committed fraud, deceit, or was dishonest in pursuit of Hayes' grievance.

Even though Hayes does not establish bad faith, he could still prevail on his claim with sufficient evidence that Local 236's actions were "arbitrary." *Cf. Edwards v. Ford Motor Co.*,

179 F. Supp. 2d 714, 722 (W.D. Ky. 2001)(noting that, "[t]he employee need not necessarily show bad faith . . .")(quoting *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir. 1983)).  "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Id.* (quoting *O'Neill*, 499 U.S. at 67)(internal citation omitted).  "[M]ere negligence or mistaken judgment is insufficient to establish a breach of the union's duty." *Id.* (quoting *Poole*, 706 F.2d at 183).  That is, "an unwise or even an unconsidered decision by the union is not necessarily an irrational decision." *Garrison*, 334 F.3d at 538 (quoting *Walk*, 958 F.2d at 1236).

At bottom, Hayes disagrees with the strategy that Local 236 adopted in pursuing his grievance, a strategy his counsel described during the in-chambers conference as "the worst possible strategy."  Hayes contends that the "mercy plea" strategy was so "egregiously bad," "irrational," and lacking any "logical, ethical, or moral advantage" as to render Local 236's decision to adopt that strategy "arbitrary."  This is so, Hayes asserts, because the strategy logically required him to admit "dishonesty" when he did not believe that he had engaged in any wrongdoing or dishonesty and had admitted only to using his judgment at the lower level hearings.  But, as Hayes acknowledged in his deposition testimony, no one from Local 236 told him to admit that he was dishonest. Hayes Dep. 49.  Dillow's descriptions of Hayes' conduct as a "bad decision," "poor judgment," or "wrongful doing" is not necessarily an admission of "dishonesty" which would have compelled Hayes to lie or to admit to facts that he did not believe were true.  True, there may be a fine line between admitting "wrongdoing" and admitting "dishonesty."  However, given that the attempts to persuade UPS that it was reasonable to use

10

judgment as to over-70s had been unsuccessful both at the termination meeting and the Local Level Hearing, the decision to admit that using judgment was "wrongdoing" was not patently unreasonable.  That the strategy was unsuccessful, and that after the panel hearing Woodward may have told Hayes he was sorry and that "I'll never send anybody up there on a mercy case," Hayes Dep. 73, does not convert the strategy into an irrational or arbitrary tactical decision.  *See Garrison*, 334 F.3d at 541 (noting, "we must be ever vigilant to avoid the distorting effects of hindsight" in evaluating a union's strategy).

And even if Hayes genuinely understood the mercy plea strategy as requiring him to admit "dishonesty," his understanding of Local 236's strategy does not, without more, establish that the strategy, in light of the actual advice given and the presentation at the panel, was "wholly irrational." *See, e.g. Garrison*, 334 F.3d at 539 (noting, "[w]hen reviewing a union representative's actions or omissions, we must never lose sight of the fact that union agents are not lawyers, and as a general proposition, cannot be held to the same standard as that of licensed professionals.").  During the in-chambers conference, both parties agreed that Local 236 was under no obligation to represent Hayes at the Panel Level Hearing.  Its willingness to do so is evidence that its conduct was not arbitrary.  Even accepting as true Hayes' claim that he never admitted wrongdoing at the earlier stages of the grievance process, – a contention, the Court notes, is difficult to reconcile with Hayes' own testimony to the panel that he "apologized at the local level hearing" –  no reasonable jury could find the "mercy plea" strategy outside the "wide range of reasonableness" afforded Local 236 under *O'Neill*. Under these circumstances, Local 236's advice to plead a mercy case and admit a mistake was not "wholly irrational."

Finally, Hayes argues that Local 236 failed to "consider or investigate [a] potentially

powerful defense" that the supervisory rides to collect evidence violated Article 37, §2 of the

CBA.  That section provides:

> No more than one (1) member of management will ride with a driver at any time except
> for the purposes of training management personnel.  No driver will be scheduled for more
> than one (1) day's ride per year with more than one (1) member of management in the
> car.  Such day will not be used for disciplinary purposes.  The sole reason for two (2)
> management employees on the car is for supervisory training.  If a supervisor assists a
> driver during an O.J.S., that day will not be used in determining a fair day's work.
> However, the union does not have a duty to present *every* available defense

This section of the CBA addresses rides with *more than one* member of management.  Here, only

one supervisor rode with Hayes.  The Court therefore finds that Article 37, §2 provides no basis

for a defense to the underlying charge of dishonesty.  Hayes never filed a grievance alleging

violation of the "ride-with" section of the Agreement, and it does not form the basis for his

lawsuit in this Court.  Even if Article 37, §2 did prohibit the manner in which UPS collected

evidence against Hayes, the union is not under a duty to present every available defense.  *See,*

*e.g. Walk*, 958 F.2d at 1326 (noting that "while a union must undertake reasonable investigation

to defend a member from discipline . . . a union need not exhaust every possible remedy

requested by a member facing disciplinary action."); *Garrison,* 334 F.3d at 539-40 (no breach

were union, did not prepare a defense that it believed was inapplicable to the grievance it was

handling and noting that such a "tactical decision" is "subject to deference").[5]

   That the mercy plea strategy was unsuccessful is insufficient to establish that it was

---

[5]The preceding analysis also applies to the extent Hayes disagrees with Local 236's tactical decision not to
base its argument on the "bad blood" between Buckman and Hayes.  Hayes also alleges that one of the exhibits that
UPS relied on at the Panel Level Hearing was a fabricated "audit" supplied by "a well-known management toady."
Hayes does not argue that Local 236 knew or could have known of this at the time of the grievance procedure, and
his testimony is that he only discovered that the document was fabricated after the hearing.  Thus, the failure to
object cannot form the basis of a breach of the duty of fair repersentation.

arbitrary.[6]  Even when viewed in a light most favorable to Hayes, these facts amount to, at most,

a tactical error, and fail to demonstrate a breach of the duty of fair representation through bad

faith or arbitrary conduct.  For this reason, the Court will sustain Defendants' motions for

summary judgment.

B.

Hayes also brings a claim against UPS for breach of the CBA.  However, because that

claim is "interlocked" with his claim against Local 236 for breach of the duty of fair

representation, the failure of his claim against Local 236 necessarily ends his claim against UPS.

*See White v. Detroit Edison Co.*, 472 F.3d 420, 425 (6th Cir. 2006)(finding that plaintiff's

"arguments as the wrongfulness of his termination, however meritorious, simply are not availing

if he cannot first show a breach of the union's duty of fair representation."); *Garrison*, 334 F.3d

at 542 (noting, "without sufficient evidence that [the union] breached its duty of fair

representation, [plaintiff's] hybrid §301 action must fail.").

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant UPS' and Defendant Local 236's motions for

summary judgment are SUSTAINED and Plaintiff's claims against them are DISMISSED WITH

PREJUDICE.

This is a final and appealable order.

---

[6]The Court remarks that the facts before it are highly distinguishable from cases were courts have found a breach of the duty of fair representation.  *See, e.g. Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 585 (6th Cir. 1994)(failure to call or even contact the one witness in grievance procedure who could have effectively and objectively corroborated testimony of disciplined union member breached duty of fair representation); *Dent. v. U.S. Postal Serv.*, 542 F. Supp. 834 (D.C. Ohio 1982)(finding material issue of fact as to whether union breached the duty of fair representation by not advising employee to file a new grievance);

13

cc:     Counsel of Record